**Robert DUSHAW, Plaintiff,**

v.

**ROADWAY EXPRESS, INC., et al., Defendants.**

**No. C87–3279.**

United States District Court,
N.D. Ohio, E.D.

April 9, 1992.

See also 816 F.Supp. 1229.

Theodore E. Meckler, Meckler & Meckler, Cleveland, OH, for plaintiff.

Barbara J. Leukart, Joseph Adam Piacquad, Jones, Day, Reavis & Pogue, Cleveland, OH, Edward C. Kaminski, Buckingham, Doolittle & Burroughs, Akron, OH, William O. Puncer, Sorrell Logothetis, Logothetis & Pence, Dayton, OH, Patrick J. Riley, International Broth. Of Teamsters, Legal Dept., Washington, DC, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On January 3, 1992, the Court issued a Memorandum and Order following the bench trial in this case. By agreement of the parties, the bench trial had addressed only the liability aspect of this case. It did not address the issue of damages. The Court found that Dushaw prevailed on his claim against Roadway for wrongful discharge and also prevailed on his claim against the Union for failure to provide adequate representation. On January 10, 1992, the Court held a status conference to discuss further proceedings necessary to determine damages. During this status conference, the Court indicated some concern as to the appropriate point in time at which back pay ought to terminate. The Court's concern derived from the length of time that had elapsed between the bench trial and its finding of liability—a period of approximately two years. Accordingly, the Court asked the parties to brief the issue of the appropriate time to terminate defendants' back pay liability.

The Court has received the parties' briefs and now holds that defendants' liability for back pay does not terminate until the Court has entered its findings regarding damages. Not until that point has "final judgment" been entered, and it is through that point in time that Dushaw is entitled to receive damages.

## A.

■ Those courts that have addressed the issue of the duration of back pay liability are unanimous in ruling that back pay awards should include the entire period of time between the wrongful termination and the court's final judgment. For example, in *Gonzalez v. Markle Mfg.*, 487 F.Supp. 1088 (W.D.Tex.1980), the plaintiff brought a Title VII employment discrimination suit. The case was tried to a magistrate, who recommended an award of back pay through the date of his recommendation. The Court affirmed the magistrate's recommendation about one year later, but awarded back pay up until the Court's own judgment. The defendant then argued that it should not be made liable for back pay for the additional one year period between the magistrate's recommendation and the court's judgment. The court disagreed:

> Although the court recognizes that there has been a long delay in reviewing the magistrate's findings, the court is also aware that the delay arises from circumstances entirely outside the control of the parties—circumstances for which the plaintiff can in no way be held responsible.[1] And, if either party must bear the loss

during this additional period, the very purpose for the creation of Title VII demands that the loss falls upon the party that commits a discriminatory act rather than the victim of that act.

*Id.* at 1092.

■ Similar logic has been used in several other cases. For example, one case held that a plaintiff who had proved she was a victim of sex discrimination should be awarded back pay even through the time of an appeal. *Taylor v. Philips Inds.*, 593 F.2d 783 (7th Cir.1979). Another case stated that plaintiffs who prove a violation of the National Labor Relations Act should receive back pay for the period of time between the administrative judge's decision and the National Labor Relations Board's final decision. *National Labor Relations Board v. A.P.W. Products Co.*, 316 F.2d 899 (2d Cir.1963). The reasoning in these other cases was that the burden of the loss should fall on the wrongdoer rather than the victim. This reasoning is equally valid in this case.[2] Thus, the Court finds that the defendants are liable for back pay and other compensatory damages up to and including the date of the Court's final ruling on the issue of damages.[3]

## B.

Although the Court did not ask the parties to brief the issue of apportionment of damages between the defendants, the Union and Roadway have both briefed this issue to the Court. The Court finds it appropriate to address this issue at this time.

1. The court explained that these circumstances included its vast responsibilities as a district court, and the constraints imposed by Congress, such as the Speedy Trial Act and a heavy criminal docket. Identical circumstances exist in this case.

2. The Sixth Circuit has indicated that the measure of back pay damages in a suit alleging a violation of § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185(a), is comparable to the measure of back pay damages for wrongful discharge under the NLRA and Title VII. *St. Clair v. Local Union No. 515, Int'l Brotherhood of Teamsters*, 422 F.2d 128, 132 (6th Cir.1969).

3. The Union also argues that damages should be limited to the expiration of the collective bargaining agreement under which Dushaw was employed, because damages covering a period of

any longer duration would be speculative. If the Union is correct, back pay liability would terminate as of March 31, 1988. In support of its position, the Union cites *IBEW Local 12 v. A–1 Electric Service, Inc.*, 535 F.2d 1 (10th Cir.), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976), and *Colon Velez v. Puerto Rico Marine Management, Inc.*, 693 F.Supp. 1335 (D.P.R. 1988). The Court finds *A–1 Electric Service* to be inapposite; however, *Colon Velez* does support the Union's position. *But see Aguinaga v. United Food & Commercial Workers Int'l*, 720 F.Supp. 862, 870–73 (D.C.Kan.1989). Because Dushaw was not asked to brief this issue, the Court declines to rule on this question at present, and directs the parties to submit briefs on this issue. See *infra*, section D.

The general rule concerning apportionment of damages in a hybrid § 301 case was stated in *Vaca v. Sipes*, 386 U.S. 171, 197–98, 87 S.Ct. 903, 920–21, 17 L.Ed.2d 842 (1967):

> The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

This "governing principle," however, has been given effect through several very different methods. One method is to base apportionment on the date of a hypothetical arbitration decision. *See, e.g., S.F. Web Pressmen & Platemakers' Union v. NLRB*, 794 F.2d 420, 424 (9th Cir.1986) (citing *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983)). This method would hold the union responsible for damages that accrued after the date the employee would have been reinstated, had the union fulfilled its duty of fairly representing the plaintiff. The employer is held responsible for damages that accrued before the hypothetical arbitration date. In this case, since the Union failed to represent Dushaw properly at the final arbitration hearing on May 21, 1987, Roadway would have one month of liability and the Union would have nearly five years of liability.

A second method is to apportion virtually all of the damages to the employer, since the employer is in the unique position of being able to abbreviate its damages by reinstating the employee, and since it was the employer that initially perpetrated the wrongful discharge. *See, e.g., Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Often, this method results in the employer paying virtually all of the damage award and the union paying the plaintiff's attorneys fees and court costs. *E.g., Milstead v. Int'l Brotherhood of Teamsters*, 649 F.2d 395 (6th Cir.1981). It is noteworthy that this approach "assum[es] a wrongful discharge by the employer independent of any discriminatory conduct by the union." *Czosek*, 397 U.S. at 29, 90 S.Ct. at 773.

When, on the other hand, either the union or the employer has caused or participated in the other's breach, joint and several liability is appropriate. *See, e.g., Bowen v. United States Postal Service*, 459 U.S. 212, 223 n. 11, 103 S.Ct. 588, 595 n. 11, 74 L.Ed.2d 402 (1983); *Vaca v. Sipes*, 386 U.S. 171, 197 n. 18, 87 S.Ct. 903, 920 n. 18, 17 L.Ed.2d 842 (1967). Apportionment of liability in this manner requires a finding either that the union participated in the employer's wrongful discharge, or that the employer participated in the union's failure to fairly represent the employee.

A final approach is to apportion damages "on a percentage fault basis." *Aguinaga v. United Food & Commercial Workers Int'l*, 720 F.Supp. 862, 869 (D.C.Kan.1989). Similar to assessing comparative fault in a tort case, this method involves reviewing the evidence presented at trial on the liability issue and assessing fault in some rational manner.

■ Of these four methods, the last seems most appropriate in this case. The hypothetical date method would lead to results that do not even come close to reflecting the true amounts of relative wrongdoing between the Union and Roadway. The second method, apportioning nearly all the damages to the employer, would produce in this case the same poor reflection of the relative amounts of wrongdoing. In addition, the Court is far from convinced that Roadway's wrongful discharge of Dushaw was truly independent of any discriminatory conduct by the union.

In fact, the Court believes that the Union and Roadway probably did participate in each other's breach. A good deal of evidence was produced showing that Union representatives and Roadway employees joined forces to end Dushaw's employment with Roadway and to preclude his reinstatement. However, joint and several liability is not appropriate in this case, because the Court has not found by a preponderance of the evidence that Roadway and the Union conspired so closely.

Thus, the Court finds that it is appropriate to apportion fault on a percentage fault basis. The analysis set out in *Aguinaga* is cogent and highly persuasive. *Aguinaga*, 720 F.Supp. at 866–70. After reviewing the evidence summarized in the Court's Memorandum and Order dated January 3, 1992, the

Court concludes that 65% of the damages should be assessed against Roadway and 35% against the Union.

### C.

At the January 10, 1992 status call, the parties indicated that if the Court determined that the back pay period extended beyond the date of trial, then Dushaw would provide the defendants with current W–2 forms and, where not available, current pay stubs. In addition, if defendants sought Dushaw's tax returns, Dushaw agreed to provide the tax returns to the Court for an *in camera* determination of whether the tax returns were consistent with the W–2 forms. If the W–2 forms were consistent with the tax returns, the tax returns would not be made available to the defendants; if inconsistent, the tax forms would be made available to the defendants subject to appropriate objections and reactions. Accordingly, the Court now orders Dushaw to supply to the defendants the appropriate W–2 forms, as well as all other pertinent information bearing on the issues of compensatory damages and the duty to mitigate.

### D.

The Court recognizes that additional discovery going to the issue of damages may have become necessary, due to the interval of time between the trial and the Court's finding of defendants' liability. Thus, the defendants are hereby authorized to jointly conduct one deposition of Dushaw for the limited purpose of discovering whether Dushaw's back pay award should be reduced or terminated for reasons of Dushaw's disability, failure to mitigate, retirement, ineligibility for reinstatement, willful concealment of earnings, or other reasons. Questions at this deposition may also address Dushaw's claims concerning the value of fringe benefits for which restitution may be due. This deposition must be conducted within three weeks of the date of this Order.

The Court also recognizes that other issues going to the amount and type of damages may require consideration, *e.g.* reinstatement, attorney's fees, and whether back pay damages should terminate with the collective bargaining agreement that was applicable to Dushaw. The Court therefore directs the parties to submit briefs on all issues having to do with damages within six weeks of the date of this Order. The parties are further directed to examine the *Aguinaga* court's approach to determining the amount of damages, as this court intends to adopt a similar approach. *See Aguinaga,* 720 F.Supp. at 870–78.

Finally, the Court reiterates its willingness to meet with the parties at any time to facilitate a settlement of this case, should the parties so desire.

IT IS SO ORDERED.