**Robert DUSHAW, Plaintiff,**

v.

**ROADWAY EXPRESS, INC., et al., Defendants.**

No. C87–3279.

United States District Court, N.D. Ohio, E.D.

Sept. 18, 1992.

Barbara J. Leukart, Joseph Adam Piacquad, Jones, Day, Reavis & Pogue, Cleveland, OH, Edward C. Kaminski, Buckingham, Doolittle & Burroughs, Akron, OH, for defendant Roadway Express, Inc.

William O. Puncer, Sorrell Logothetis, Logothetis & Pence, Dayton, OH, for defendant Local 407, Intern. Broth. of Teamsters, Truck Drivers Union.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On January 3, 1992, this Court issued its Memorandum and Order following the bench trial in this case. By agreement of the parties, the bench trial addressed only the issue of liability; it did not address the issue of damages. In its January 3, 1992 Memorandum and Order, the Court found that Robert Dushaw prevailed on his claim against Roadway Express, Inc. ("Roadway") for wrongful discharge, and also prevailed on his claim against Local 407 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union") for failure to provide adequate representation.

Because a relatively long period of time passed between the end of the bench trial and the issuance of the Court's findings of fact and conclusions of law, the Court asked the parties to submit briefs on the issue of the appropriate time to terminate defendants' back pay liability. On April 9, 1992, the Court issued a Memorandum and Order finding that the defendants' liability for back pay would terminate only when the Court entered its final order regarding damages. The Court then directed the parties to submit final briefs as to the amount of damages, and the Court also asked the parties to address certain other damages-related issues, including: 1) whether Dushaw's back pay award should be reduced or terminated because of his disability, failure to mitigate, retirement, ineligibility for reinstatement, willful concealment of earnings, or for other reasons; 2) whether Dushaw should be reinstated; 3) whether an award of attorney's fees was appropriate; and 4) whether back pay damages should terminate with the last

Theodore E. Meckler, Meckler & Meckler, Cleveland, OH, for plaintiff.

collective bargaining agreement under which Dushaw was employed.

The parties supplied briefs on these and other issues. The Court now finds that Dushaw is entitled to summary judgment on the issue of damages, as follows: 1) Dushaw's back pay damages should not terminate with the last collective bargaining agreement under which Dushaw was employed; 2) Dushaw did properly mitigate his damages; 3) reinstatement is not appropriate in this case; 4) the defendants are jointly liable to Dushaw for compensatory damages in the amount of $107,774.19, including prejudgment interest, with the Union liable for 35% of those damages and Roadway liable for 65% of those damages; 5) defendants are additionally jointly liable to Dushaw for compensatory damages in relation to Dushaw's lost pension benefits, and are ordered to take all steps necessary to make certain that Dushaw will receive credit according to his old pension plan for his years of lost service; 6) Roadway is additionally solely liable to Dushaw for punitive damages in the amount of $100,000; and 7) the defendants are jointly liable to Dushaw for costs and attorneys fees in the amount of $165,450.22, with the Union liable for 35% of this amount and Roadway liable for 65% of this amount. The Court's rulings are explained seriatim, below.

## I. LAW OF SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

■ The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

## II. TERMINATION OF THE COLLECTIVE BARGAINING AGREEMENT

■ The defendants argue that, in calculating Dushaw's damages, the Court should limit accrued damages to the period that the collective bargaining agreement that was in

existence at the time of Dushaw's discharge was effective. The defendants rely on two cases to support this position: *Int'l Bhd. of Electrical Workers, Local 12, AFL–CIO v. A–1 Electric Service, Inc.*, 535 F.2d 1 (10th Cir.1976), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976); and *Colon Velez v. Puerto Rico Marine Mgt., Inc.*, 693 F.Supp. 1335 (D.P.R.1988). However, the Court finds that these cases are not persuasive and that the defendants' argument is unconvincing.

This Court has already found *A–1 Electric Service* to be inapposite. *Dushaw v. Roadway Express*, 816 F.Supp. 1226 (N.D. Ohio 1992). In *A–1 Electric Service*, an employer breached a collective bargaining agreement when it failed to make contributions to various employee benefit funds. In response, the union withdrew its member-workers, brought suit against the employer for breach of contract, and won. The district court awarded the union damages, but limited damages to those that had accrued during the effective period of the collective bargaining agreement that the employer had breached.

In upholding the district court, the *A–1 Electric Service* court specifically noted that the collective bargaining agreement under which the union members were originally being paid was not, and was never intended to be, renewed. *A–1 Electric Service*, 535 F.2d at 4. In the present case, however, Roadway and the Union continue their relationship to this day under a collective bargaining agreement that is virtually identical to the one in force at the time of Dushaw's discharge. *A–1 Electric Service* is easily distinguishable from the instant case on its facts. *A–1 Electric Service* does not support the defendants' argument that Dushaw may only recover damages for the period beginning with his discharge and ending with the expiration of the collective bargaining agreement that was in force at the time he was discharged.

Nor does the Court find *Colon Velez* persuasive. In *Colon Velez*, an employer discharged twenty union-member security guards and replaced them with non-union guards. The original twenty guards had been a small sub-group within the larger bargaining unit protected by the collective bargaining agreement. The twenty guards

brought a § 301 hybrid suit against the employer and their union, just as Dushaw has done in this case. The *Colon Velez* court ruled in favor of the guards on a motion for summary judgment. In deciding damages, however, the *Colon Velez* court found that the guards were only entitled to the benefits that had accrued under the collective bargaining agreement in force at the time of the guards' discharge. The *Colon Velez* court found that the guards could not collect damages for any wages or benefits that they might have earned under later-formed collective bargaining agreements.

In *Colon Velez*, however, it was clear at the time of the guards' discharge that the employer had no intention of including the guards in the bargaining unit in any subsequent contract. That is not the case here, as Roadway continues to employ many of the drivers whom it employed when Dushaw was discharged. Furthermore, the *Colon Velez* court came to its decision regarding the amount of the guards' damages "without authority or reasoning." *Aguinaga v. United Food and Commercial Workers Int'l Union, AFL–CIO/CLC*, 720 F.Supp. 862, 872 (D.Kan. 1989). Indeed, the result in *Colon Velez* seems contrary to the governing "make whole" principle enunciated in *Bowen v. United States Postal Service*, 459 U.S. 212, 222, 103 S.Ct. 588, 595, 74 L.Ed.2d 402 (1983) ("Of paramount importance is the right of the employee, who has been injured by both the employer's and the union's breach, to be made whole."). Therefore, this Court finds that it is unreasonable to conclude in this case that the expiration of the 1985–1988 collective bargaining agreement, which was in force at the time of Dushaw's discharge, would have ended Dushaw's employment. The Court finds that Dushaw is entitled to receive back pay damages from the date of his discharge up to the date of this Court's final judgment.

## III. MITIGATION

The defendants argue that Dushaw's damages should be limited because he did not make sufficient efforts to mitigate his damages. The defendants correctly state the principle that a person injured by an act of

another should use reasonable care to minimize or mitigate the resulting damages. *N.L.R.B. v. Westin Hotel,* 758 F.2d 1126, 1130 (6th Cir.1985). However, defendants do not persuade the Court that Dushaw in fact failed to exercise reasonable effort to mitigate his damages.

■ Mitigation of damages is an affirmative defense upon which the employer bears the burden of proof. *Id.* The employer's burden of proof in attempting to show a failure to mitigate has been defined as follows:

> A former employer meets its burden of proof of "mitigation of damages" if the former employer proves that (a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of these comparable jobs.

*Black v. School Committee of Malden,* 369 Mass. 657, 341 N.E.2d 896, 900 (1976). *See also Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). A discharged employee is not required to seek or accept dissimilar or inferior employment, *United States v. City of Chicago,* 853 F.2d 572, 578–79 (7th Cir.1988), nor is he held to the highest standard of diligence; he is merely required to exercise "ordinary" or "reasonable" diligence in his efforts to secure employment, *N.L.R.B. v. Westin Hotel,* 758 F.2d 1126, 1130 (6th Cir. 1985).

■ The defendants' burden in this regard is not satisfied by showing that Dushaw could have taken some further actions in seeking new employment. It is always the case that an individual could have taken some further action. Rather, the defendants must show that Dushaw's course of conduct was so deficient as to constitute an unreasonable failure to pursue available employment opportunities.

■ In this case, Dushaw's efforts in mitigation were reasonable and sufficient as a matter of law. The help wanted advertisements and other evidence put forth by defendants do not show any deficiencies in Dushaw's failure to mitigate. Immediately after Dushaw was discharged in April of 1987, he began to seek employment. Dushaw visited various trucking companies, answered advertisements (although perhaps not every one that could be found in the local papers, as defendants point out), filled out applications, and talked to certain Union officials. He worked regularly as a casual trucking employee. Despite Dushaw's efforts, he was not able to find a regular, full time job until November of 1988, when he became employed by the U.S. Postal Service. Dushaw's new job paid significantly less than his prior position, but it was full-time work. After attaining that job, Dushaw has worked continuously. These efforts are eminently reasonable. Thus, the Court finds that Dushaw has not failed to mitigate his damages, and the damage award will not be reduced for failure to mitigate.

## IV. REINSTATEMENT

■ Another issue facing the Court is whether or not Dushaw should be reinstated to his former position with Roadway. The Court has broad discretionary powers to fashion remedies under 29 U.S.C. § 185. *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). "If a breach of the duty [of fair representation] by the union and a breach of contract by the employer are proven, the Court must fashion an appropriate remedy." *Vaca v. Sipes,* 386 U.S. 171, 187, 87 S.Ct. 903, 915, 17 L.Ed.2d 842 (1967).

■ In this case, it seems neither wise nor feasible to order reinstatement of Dushaw. A high degree of animosity between the parties was evident at trial, and is clearly revealed in the Court's findings of fact and conclusions of law. *Dushaw v. Roadway Express,* No. C87–3279, slip op., 1992 WL 55499 (N.D. Ohio Jan. 3, 1992). The Court finds that "[t]he hostility which unfortunately exists between the parties precludes the possibility of a satisfactory employment relationship." *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985). Thus, the

Court declines to order that Dushaw be reinstated to his present position.

■ Given that reinstatement is inappropriate, an award of front pay must be considered. In this case, however, the Court finds that a front pay award is also inappropriate. Front pay awards are called for if "an award of back pay does not fully redress ... plaintiff's injuries." *Id.* The Court finds that the back pay damages award made here does fully redress Dushaw. Dushaw is currently employed, so front pay is not necessary to reimburse him for time spent finding a new job. Also, the Court has awarded a sizable punitive damages award. Thus, a front pay award will do little more to "aid in ending illegal discrimination and rectifying the harm it causes." *Id.* In sum, the Court determines that neither front pay nor reinstatement are suitable or appropriate in this case.

## V. PREJUDGMENT INTEREST

■ The Court addresses the issue of prejudgment interest at this point because the Court next turns to the calculation of Dushaw's damages. Whether or not prejudgment interest should be awarded is left to the sound discretion of the Court. *E.E.O.C. v. Wooster Brush Co. Employees Relief Assn.*, 727 F.2d 566, 578–79 (6th Cir. 1984). Prejudgment interest is fully consistent with the underlying make-whole philosophy envisioned by the Supreme Court in *Bowen.* As one court noted, the payment of interest brings "a restoration of the situation, as nearly as possible, to that which would have obtained, but for the illegal discrimination." *N.L.R.B. v. American Compress Warehouse,* 374 F.2d 573, 575 (5th Cir.1967).

Since there is no applicable federal interest statute, the Court looks to the state interest statute in order to fix an appropriate rate. Ohio has a statutory interest rate of 10% simple interest per annum. Ohio Rev.Code § 1343.03. Thus, Dushaw is awarded prejudgment interest on his damages at the rate of 10% per annum.[1]

## VI. COMPENSATORY DAMAGES

### A. Back Pay

■ The governing principle by which the Court is guided in fashioning a remedy is "the right of the employee, who has been injured by both the employer's and the union's breach, to be made whole." *Bowen v. United States Postal Service,* 459 U.S. 212, 222, 103 S.Ct. 588, 595, 74 L.Ed.2d 402 (1983). It is clear that back pay is one of the most important components of a "make-whole" damages award. Normally, a successful plaintiff is entitled to an award of all back wages, less any interim earnings.

■ Under the make-whole rationale, victorious plaintiffs are presumptively entitled to back pay until the date that a judgment on damages is entered in the case. *Dushaw v. Roadway Express,* No. C87–3279, slip op. at 2–4 (N.D. Ohio Apr. 9, 1992). The plaintiff bears the burden of proving that he has been damaged. However, "[o]nce the fact of damage has been properly established, uncertainty as to its amount will not foreclose recovery." *United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Backman Sheet Metal Works, Inc.,* 598 F.Supp. 212, 221 (S.D. Ohio 1984). The Court "may approximate damages on the basis of just and reasonable inferences from the evidence." *Id.*

As noted in *Aguinaga v. United Food and Comm. Workers Int'l.,* 720 F.Supp. 862 (D.Kan.1989), two basic methods have been developed by the courts to determine the amount of back wages to which a wrongfully discharged plaintiff is entitled. First, the Court may base the award on the plaintiff's general work patterns in the years preceding the discharge. *Id.* at 874. Second, the Court may award back pay based on the representative employee method, of which there are two variations. *Id.* The first variation requires averaging the actual earnings during the back pay period of other employees who would be likely to earn the same or similar wages as the discharged plaintiff. *Id.*

---

1. The calculations made in the following section show the addition of this prejudgment interest by multiplying the amount of damages that accrued in any given year by the number of years since they accrued. Thus, for example, damages accrued in 1987 would be increased by 47.5% in interest, because 4.75 years have passed from 12/31/87 to 09/01/92.

(citing *N.L.R.B. v. S.E. Nichols of Ohio, Inc.,* 704 F.2d 921, 924 (6th Cir.1983), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983)). The second variation requires a comparison between the plaintiff and one representative employee. *Id.* (citing *N.L.R.B. v. Overseas Motors, Inc.,* 818 F.2d 517 (6th Cir.1987)).

■ The Court finds that in this case, the best method for determining back pay owed to Dushaw is to examine the actual earnings of two employees who were situated similarly to Dushaw at the time of Dushaw's discharge. When Dushaw was discharged, the employee immediately above Dushaw on Roadway's seniority list was W.J. Thaler; the employee immediately below Dushaw was L.M. Kubik. The earnings for Mr. Kubik for the pertinent time period, prorated or extrapolated when necessary, are as follows:

| Time Period | Earnings | Earnings + 10% interest |
|---|---|---|
| 04/20/87–12/31/87 | $ 24,730.79 | $ 36,477.92 |
| 01/01/88–12/31/88 | $ 35,510.09 | 48,826.37 |
| 01/01/89–12/31/89 | $ 38,853.31 | 49,537.97 |
| 01/01/90–12/31/90 | $ 40,831.71 | 47,977.26 |
| 01/01/91–12/31/91 | $ 43,194.41 | 46,433.99 |
| 01/01/92–09/01/92 | $ 35,455.36 | 35,455.36 |
| TOTAL | $218,575.67 | $264,708.87 |

The earnings for Mr. Thaler for the same time period, also prorated or extrapolated when necessary, are as follows:

| Time Period | Earnings | Earnings + 10% interest |
|---|---|---|
| 04/20/87–12/31/87 | $ 14,679.08 | $ 21,651.64 |
| 01/01/88–12/31/88 | 26,948.80 | 37,054.60 |
| 01/01/89–12/31/89 | 33,374.52 | 42,552.51 |
| 01/01/90–12/31/90 | 37,026.65 | 43,506.31 |
| 01/01/91–12/31/91 | 38,822.92 | 41,734.64 |
| 01/01/92–09/01/92 | 29,188.06 | 29,188.06 |
| TOTAL | $180,040.03 | $215,687.76 |

The average earnings for Mr. Kubik and Mr. Thaler for the relevant time period, then, is $199,307.87. With a 10% prejudgment interest factor, the average earnings become $240,198.31. Thus, the Court finds that Dushaw's gross back wages would have been $199,307.87, had he not been improperly discharged by Roadway, and that including 10% prejudgment interest adjusts Dushaw's gross back pay award to $240,198.31.

From this amount of gross back wages owed to Dushaw must be subtracted, as a set off, the earnings that Dushaw was able to generate through other employment, after his discharge. Dushaw's total interim earnings for the pertinent period have been as follows:

| Time Period | Earnings | Earnings + 10% interest |
|---|---|---|
| 04/20/87–12/31/87: | | |
| Roadway Severance Pay | $ 4,229.29 | |
| ANR Freight System | 5,306.04 | |
| Dedicated Freight | 2,139.75 | |
| Putnam Transfer | 505.50 | |
| Transcom Lines | 299.16 | |
| Andrews Bartlett | 1,403.68 | |
| 1987 Total: | $13,883.42 | $ 20,478.04 |
| 01/01/88–12/31/88 | | |
| Dedicated Freight | $ 1,745.60 | |
| Heritage Wholesalers | 566.48 | |
| Grubach Trucking Co. | 102.82 | |
| Transcom Lines | 798.84 | |
| U.S. Postal Service | 1,736.07 | |
| 1988 Total | $ 4,949.81 | $ 6,805.99 |
| 01/01/89–12/31/89 | | |
| U.S. Postal Service | $ 27,387.63 | $ 34,919.23 |
| 01/01/90–12/31/90 | | |
| U.S. Postal Service | $ 28,236.64 | $ 33,178.05 |
| 01/01/91–12/31/91 | | |
| U.S. Postal Service | $ 28,364.62 | $ 30,491.97 |
| 01/01/92–09/01/92 | | |
| U.S. Postal Service | $ 20,901.78 | $ 20,901.78 |
| TOTAL | $123,723.90 | $146,775.06 |

Thus, the total of the set-offs for back pay to which the defendants are entitled amounts to $123,723.91. When a 10% simple interest factor is added to the set-off calculation, Dushaw's set-offs become $146,775.06. This amount must be deducted from the gross back wages, with interest added, of $240,-198.31 that Dushaw would have earned had he not been improperly discharged. Accordingly, Dushaw is entitled to $93,423.25 in net back pay, including 10% prejudgment interest.

### B. Back Fringe Benefits

#### 1. Health Benefits

■ Medical insurance or other health benefits are recoverable as part of a damage award in this case. *Aguinaga,* 720 F.Supp. at 874. Dushaw should be compensated for loss of medical benefits if he has purchased substitute insurance coverage or incurred out-of-pocket medical expenses that would have been reimbursed under the medical insurance coverage he enjoyed in his prior job.

*Id.* at 874–75; *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1185–1186 (6th Cir. 1983).

While employed at Roadway, Dushaw was a participant in and received the benefit of the Central States, Southeast & Southwest Areas Health and Welfare Fund ("Health Fund"). The Health Fund provided broad health insurance coverage for Dushaw and his family. Dushaw was provided with this health insurance coverage free of charge, as a fully funded fringe benefit.

Since his unlawful discharge on April 20, 1987, and his resulting loss of health insurance coverage, Dushaw has both purchased substitute insurance coverage and has also incurred out-of-pocket medical expenses that would have been reimbursed under the Health Fund. From the time of his discharge until Dushaw became regularly employed again with the U.S. Postal Service, Dushaw obtained health insurance coverage from the Health Fund by taking advantage of the self-pay option and making regular payments to the Health Fund out of his own pocket. The sum of his payments was $6,166.90. Thus, including prejudgment interest, Dushaw has suffered damages in the amount of $8,686.26, calculated as follows:

| Time Period | Payments | Payments + 10% interest |
|---|---|---|
| 04/20/87–12/31/87: | $2,067.70 | $3,049.86 |
| 01/01/88–12/31/88: | 4,099.20 | 5,636.40 |
| TOTAL: | $6,166.90 | $8,686.26 |

After finding a job with the U.S. Postal Service in November of 1988, Dushaw became covered by a health insurance plan through his new employment, and discontinued his payments to the Health Fund. Dushaw has had a total of $1,334.43 deducted from his Postal Service paychecks for his health insurance coverage. Thus, including prejudgment interest, Dushaw has suffered damages in the amount of $1,471.48, calculated as follows:

| Time Period | Payments | Payments + 10% interest |
|---|---|---|
| 01/01/88–12/31/88 | $ 7.21 | $ 9.91 |
| 01/01/89–12/31/89 | 204.98 | 261.35 |
| 01/01/90–12/31/90 | 235.00 | 276.13 |
| 01/01/91–12/31/91 | 491.30 | 528.15 |
| 01/01/92–09/01/92 | 395.94 | 395.94 |
| TOTAL | $1,334.43 | $1,471.48 |

Finally, since the time he became employed by the Postal Service, Dushaw has also incurred various medical expenses on behalf of his family which were not reimbursed as fully as would have been the case under the Health Fund. Dushaw claims that these expenses total $4,580.09, as follows: 1988—$39.00; 1989—$996.03; 1990—$1,335.33; 1991—$1,208.95; and 1992—$1,000.78. The Court finds, however, that Dushaw has not carried his burden of proof as to some of these expenses in establishing that the expenses would have been fully covered under his former health plan. Specifically, the Court finds that Dushaw has not established that he would have been reimbursed for $239.43 of his 1989 expenses or for $995.00 of his 1990 expenses. Thus, the Court finds that Dushaw has only suffered damages for non-reimbursed medical expenses in the amount of $3,345.66. Including prejudgment interest, Dushaw has therefore suffered additional damages in the amount of $3,718.59, calculated as follows:

| Time Period | Payments | Payments + 10% interest |
|---|---|---|
| 01/01/88–12/31/88 | $ 39.00 | $ 53.63 |
| 01/01/89–12/31/89 | 756.60 | 964.67 |
| 01/01/90–12/31/90 | 340.33 | 399.89 |
| 01/01/91–12/31/91 | 1,208.95 | 1,299.62 |
| 01/01/92–09/01/92 | 1,000.78 | 1,000.78 |
| TOTAL | $3,345.66 | $3,718.59 |

In sum, then, Dushaw was damaged by the loss of his Roadway-provided Health Fund coverage in the total amount of $13,876.33, including prejudgment interest. This amount must also be assessed against the defendants as damages.

2. Pent Benefits

As a Roadway employee, Dushaw was a participant in the Central States, Southeast & Southwest Areas Pension Plan ("Pension Plan"). Dushaw is entitled to compensation for the loss of his pension benefits arising from his discharge, in order to make him whole. *Aguinaga,* 720 F.Supp. at 875. Under the relevant collective bargaining agreements, Roadway was required to contribute a prescribed amount per week for each regular employee. This weekly amount breaks down as follows:

| 04/20/87–04/01/88: | $65 per week |
| 04/01/88–04/01/91: | $73 per week |
| 04/01/91–present: | $83 per week |

In order to make Dushaw whole, therefore, the Court now orders the defendants to take all steps necessary to make certain that Dushaw will receive credit for his years of lost service. This includes payment into the Pension Plan of the following amounts:

| Time Period | Benefits |
| --- | --- |
| 04/20/87–12/31/87: ($65 × 36 weeks) | $ 2,340.00 |
| 01/01/88–12/31/88: ($65 × 13 weeks plus $73 × 39 weeks) | 3,692.00 |
| 01/01/89–12/31/89: ($73/week for 52 weeks) | 3,796.00 |
| 01/01/90–12/31/90: ($73/week for 52 weeks) | 3,796.00 |
| 01/01/91–12/31/91: ($73 × 13 weeks plus $83 × 39 weeks) | 4,186.00 |
| 01/01/92–09/01/92: ($83 × 35 weeks) | 2,905.00 |
| TOTAL: | $20,715.00 |

However, defendants may subtract from this amount the sum of those contributions that other employers made to the Pension Plan while Dushaw worked as a casual employee during 1987 and 1988.

For the same reasons that the Court declines to award Dushaw front pay, the Court also declines to award Dushaw "front fringe benefits." Defendants are ordered to take all steps necessary to make certain that Dushaw will receive credit for Pension Plan contributions, starting with the date of his termination and ending on September 1, 1992. Finally, for the same reasons cited below in *"Section X. Apportionment"* of this opinion, Roadway is liable for 65% of the expenses related to restoring Dushaw's pension benefits, and the Union is liable for 35%.

### 3. Other Fringe Benefits

■ Dushaw argues that he is entitled to reimbursement for various other fringe benefits that he was unable to enjoy because he was illegally discharged. Specifically, Dushaw seeks reimbursement for $10,820.30 in net vacation pay, $5,443.12 in holiday pay, and $372.24 in funeral leave pay. The Court finds that awards of net vacation pay and holiday leave pay would be duplicative of reimbursement already made to Dushaw

through back pay compensation. However, Dushaw did suffer additional damages because he was unable to take advantage of his funeral leave benefits when his father died in 1989. Thus, Dushaw is awarded damages in the amount of $372.24 for lost funeral leave benefits. Including 10% prejudgment interest with this figure increases Dushaw's lost funeral leave benefits to $474.61.

### C. Total Compensatory Damages

In summary, including prejudgment interest, Dushaw is entitled to $93,423.25 in net back pay, $13,876.33 for lost Health Fund coverage, and $474.61 for lost funeral leave benefits. In addition, Dushaw is entitled to a contribution to the Pension Plan in the approximate amount of $20,715.00, less interim contributions from other employers, for lost Pension Plan benefits. The total of Dushaw's compensatory damages, excluding the Pension Plan contributions but including prejudgment interest, is $107,774.19.

## VII. PUNITIVE DAMAGES

■ Punitive damages may not be awarded against the Union under § 301. *Int'l Bhd. of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). It is less clear whether punitive damages may be awarded against an employer; district courts are not in agreement on this issue, and the Sixth Circuit has not addressed the question. *See Black v. Ryder/PIE Nationwide, Inc.,* 730 F.Supp. 102, 106 (E.D.Tenn. 1989) (discussing cases). Indeed, this Court found that in the circumstances of another case, punitive damages against an employer were inappropriate. *Smith v. ABS Industries, Inc.,* 653 F.Supp. 94, 100 (N.D.Ohio 1986).

■ The Court finds compelling, however, the logic of those courts that have found, under proper circumstances, that punitive damages should be awarded against the employer. *E.g., Brown v. World Airways, Inc.,* 539 F.Supp. 179, 181 (S.D.N.Y.1982); *Harrison v. United Transp. Union,* 530 F.2d 558, 563 (4th Cir.1975), *cert. den.* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). Specifically, the Court finds that punitive damages may be recovered when the employer's con-

duct was so outrageous or extraordinary that punishment is appropriate. The Court further finds that this is such a case.

It is clear that Roadway targeted Dushaw for discharge long before the events leading to the actual discharge occurred. As the Court noted earlier, Roadway set upon a "purposeful attempt to 'set up' Dushaw." *Dushaw v. Roadway Express*, No. C87–3279, slip op. at 31, 1992 WL 55499 (N.D.Ohio Jan. 3, 1992). The Court also stated earlier that Roadway pursued its charges against Dushaw in "bad faith." *Id.* at 15. Finally, the Court found that Roadway and the Union "joined forces to end Dushaw's employment with Roadway and preclude his reinstatement." *Dushaw v. Roadway Express*, No. C87–3279, slip op. at 6 (N.D.Ohio Apr. 9, 1992). In sum, the Court finds that the conduct of Roadway in acting to discharge Dushaw is shocking, outrageous, and extraordinary, and deserving of punishment.

█ The Court takes judicial notice that Roadway is a major corporate entity, one of the largest trucking companies in the world. Roadway's parent corporation, Roadway Services, Inc., enjoyed 1991 revenues of $3,176,956,000, with assets of $1,488,632,000. Roadway is the largest operating company of Roadway Services, Inc. Thus, the Court finds that an award of $100,000 in punitive damages against Roadway to deter similar misconduct in the future is appropriate.

## VIII. ATTORNEY'S FEES AND COSTS

█ An evidentiary hearing need not be held on an attorney's fee application where the affidavits and briefs are sufficiently detailed to provide a basis for the fee award. *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1389 (9th Cir.1990). The Court finds that an evidentiary hearing is unnecessary in this case.

In *Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court recognized that there are certain exceptions to the "American rule" that without statutory authorization, attorney's fees are not recoverable by the prevailing party in federal litigation. These exceptions include cases where "the losing party has acted in bad faith." *Id.* at 258–259, 95 S.Ct. at 1622. Because 29

U.S.C. § 185 does not specifically provide for an award of attorney's fees, courts have frequently applied this exception to award attorney's fees to prevailing plaintiffs in § 301 litigation. *See, e.g., Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276 (6th Cir.1974); *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir.1981); *Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616 (8th Cir.1978); *de Arroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281 (1st Cir.1970). As the Court stated above in its discussion of the appropriateness of punitive damages, defendants acted discriminatorily and in bad faith in this case. Thus, this exception to the "American Rule" is also appropriately applied in this case.

Having determined that an award of attorney's fees is appropriate, the Court must next decide the proper amount of that award. In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Supreme Court noted that:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis in which to make an initial estimate of the value of lawyer's services.

Dushaw's counsel has requested an hourly rate of $150. The Court finds this rate to be reasonable, given Dushaw's counsel's experience and the nature of this case. Dushaw's counsel has also submitted an affidavit stating that the number of hours expended on this case, through July 17, 1992, is 612.5 hours. The Court notes that in his affidavit, Dushaw's counsel has subtracted 29.8 hours from his hourly log, in compliance with counsel's obligation to make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. at 1939–40. A review of the itemized statement of time expended reveals that Dushaw's counsel's stated number of hours is reasonable, and that the hours were reasonably spent under the circumstances.

Multiplying the total number of hours claimed by the hourly rate amounts to $91,875.00 in attorney's fees, the "lodestar"

amount. These computations produce a reasonably objective "initial estimate of the value of the lawyer's services." *Id.* at 433, 103 S.Ct. at 1939. Counsel for Dushaw obtained excellent results for his client in this case, so counsel should recover a fully compensatory fee. *Id.* at 435, 103 S.Ct. at 1940.

Once the Court has arrived at this initial estimate of the worth of counsel's services, there remain other considerations that may result in an adjustment of the fee either upward or downward. The Court takes judicial notice of the difficulty for plaintiffs in obtaining counsel in cases such as this one. Within this district, there are very few competent attorneys experienced and knowledgeable in the area of § 301 hybrid litigation. Such litigation is a sub-specialty in the field of employment and labor law, and many attorneys refuse to handle § 301 cases. Also, the burden of proof imposed upon a plaintiff is a very heavy one. Due in large part to this heavy burden, the success rate for plaintiffs in § 301 hybrid cases is extremely low. In fact, at the status conference after the Court's decision on liability in this case, both defense counsel and the Court noted that they had never before seen a § 301 hybrid case successfully litigated.

Furthermore, there is an especially high difficulty in obtaining counsel to prosecute such suits on a contingency basis, as Dushaw's counsel has undertaken here. The facts of this case were complicated, and strongly disputed. A plaintiff's verdict in this case was by no means "a sure thing;" just the opposite. A substantial upward adjustment of counsel's fees to compensate counsel for the risk of pursuing this case, therefore, is appropriate. *Northcross v. Bd. of Education, Memphis City Schools,* 611 F.2d 624, 638 (6th Cir.1979), *cert. denied,* 474 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980).

Several recent cases in this district have dealt with the issue of multipliers for counsel who have taken cases on a contingency basis. In *Fite v. First Tennessee Production Credit Assn.,* 861 F.2d 884, 894–895 (6th Cir.1988), the Sixth Circuit affirmed a multiplier of 1.75 based upon the contingent nature of the representation. Likewise, in *Leibson v. Ohio Dept. of Mental Retardation & Developmental Disabilities,* No. CV 157166, slip op. (Ct.

Common Pleas Sept. 27, 1991) the state court awarded a multiplier of 1.75. In this district, 1.75 is the appropriate multiplier. Because of the nature of this case, the results achieved, and because counsel for Dushaw took the case on a contingency basis, the Court finds that a multiplier of 1.75 should be applied to increase Dushaw's attorney's fees award. Therefore, counsel for Dushaw is entitled to 1.75 × $91,875.00, or $160,-781.25, in attorney's fees.

In addition to attorney's fees, Dushaw is entitled to expenses as part of the court costs accrued in this action. Fed.R.Civ.P. 54. Dushaw's counsel avers that he has incurred costs of $4,668.97, which amount the Court finds reasonable. In summary, the Court finds that Dushaw is entitled to recover attorney's fees and costs in the amount of $165,450.22.

## IX.  APPORTIONMENT

For the reasons stated in its April 9, 1992 Memorandum and Order, the Court concludes that 65% of the back pay damages is to be paid by Roadway, and 35% of the back pay damages is to be paid by the Union. *Dushaw v. Roadway Express,* No. C87–3279, slip op. at 4–7 (N.D. Ohio Apr. 9, 1992). As stated above, the punitive damages portion of this judgment is assessed entirely against Roadway.

The Court has not yet ruled on apportionment of the award of attorney's fees and costs. Roadway cites *Scott v. Anchor Motor Freight, Inc.,* 496 F.2d 276 (6th Cir.1974), for the proposition that the Union should be held liable for 100% of the attorney's fees award. The Union cites *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) for the proposition that Roadway should be held liable for the bulk of the attorney's fees award. The Court finds that the analysis it undertook to determine the apportionment of compensatory damages liability is equally pertinent in deciding how to allocate liability for attorney's fees and costs. Previously, the Court stated:

> the Court is far from convinced that Roadway's wrongful discharge of Dushaw was truly independent of any discriminatory conduct by the union.

In fact, the Court believes that either the Union or Roadway probably did participate in the other's breach. A good deal of evidence was produced showing that Union representatives and Roadway employees joined forces to end Dushaw's employment with Roadway and to preclude his reinstatement.

*Dushaw v. Roadway Express,* No. C87–3279, slip op. at 6 (N.D. Ohio Apr. 9, 1992).

Given that the Union and Roadway acted together from the start, to at least some degree, to cause Dushaw's discharge, the Court finds that the fairest method to allocate attorney's fees liability is to apportion liability on a percentage basis. The Court earlier found that 65% of the fault should be assessed against Roadway and 35% should be assessed against the Union. *Id.* at 7. Accordingly, the Court finds that Roadway is liable for 65% of the attorney's fees award, and the Union is liable for the remaining 35%.

## X. SUMMARY

The Court has previously found that Roadway and the Union are liable to Dushaw in this case. The Court now enters its final appealable order in determining damages in this case. The Court finds that: 1) Dushaw's back pay damages should not terminate with the last collective bargaining agreement under which Dushaw was employed; 2) Dushaw did properly mitigate his damages; 3) reinstatement is not appropriate in this case; 4) the defendants are jointly liable to Dushaw for compensatory damages in the amount of $107,774.19, including prejudgment interest, with the Union liable for 35% of those damages and Roadway liable for 65% of those damages; 5) defendants are additionally jointly liable to Dushaw for compensatory damages in relation to Dushaw's lost pension benefits, and are ordered to take all steps necessary to make certain that Dushaw will receive credit in his Pension Plan for his years of lost service; 6) Roadway is additionally solely liable to Dushaw for punitive damages in the amount of $100,000; and 7) the defendants are jointly liable to Dushaw for costs and attorneys fees in the amount of $165,450.22, with the Union liable for 35% of this amount and Roadway liable for 65% of this amount.

The following is a summary of Dushaw's award of damages, including prejudgment interest, exclusive of amounts that the defendants must contribute to Dushaw's Pension Plan:

| | |
|---|---|
| Compensatory Damages: | $107,774.19 |
|    Liability of Roadway (65%): | $70,053.22 |
|    Liability of the Union (35%): | $37,720.97 |
| | |
| Punitive Damages against Roadway: | $100,000.00 |
| | |
| Attorney's Fees & Costs: | $165,450.22 |
|    Liability of Roadway (65%): | $107,542.64 |
|    Liability of the Union (35%): | $57,907.58 |

IT IS SO ORDERED.

## ORDER

The Court, previously finding that Roadway and the Union are liable to Dushaw, has filed its memorandum and order in determining damages in this case. Therefore,

IT IS ORDERED that: 1) Dushaw's back pay damages should not terminate with the last collective bargaining agreement under which Dushaw was employed; 2) Dushaw did properly mitigate his damages; 3) reinstatement is not appropriate in this case; 4) the defendants are jointly liable to Dushaw for compensatory damages in the amount of $107,774.19, including prejudgment interest, with the Union liable for 35% of those damages and Roadway liable for 65% of those damages; 5) defendants are additionally jointly liable to Dushaw for compensatory damages in relation to Dushaw's lost pension benefits, and are ordered to take all steps necessary to make certain that Dushaw will receive credit in his Pension Plan for his years of lost service; 6) Roadway is additionally solely liable to Dushaw for punitive damages in the amount of $100,000; and 7) the defendants are jointly liable to Dushaw for costs and attorneys fees in the amount of $165,450.22, with the Union liable for 35% of this amount and Roadway liable for 65% of this amount.

IT IS FURTHER ORDERED that this judgment is final and appealable.