**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 12, AFL–CIO, et al., Plaintiffs-Appellants,**

v.

**A–1 ELECTRIC SERVICE, INC., a corporation, Defendant-Appellee.**

No. 75–1317.

United States Court of Appeals, Tenth Circuit.

March 4, 1976.

Rehearing Denied March 29, 1976.

Wayne D. Williams and Howard E. Erickson, of Williams, Erickson & Wallace, Denver, Colo., for plaintiffs-appellants.

William E. Kenworthy, Denver, Colo., for defendant-appellee.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

This action, commenced in the district court for the District of Colorado pursuant to section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), seeks damages from A–1 Electric Service for its alleged breach of the collective bargaining agreement. The plaintiffs appeal from a favorable judgment below, alleging inadequacy in the amount of the awarded damages.

The present controversy surfaced in early 1973 when A–1 became delinquent in its payments to various funds due under the collective bargaining agreement. The agreement provided for a checkoff of union dues and payments into the vacation fund, benefit fund, pension trust fund, apprenticeship and training trust fund, and to the National Employees Benefit Board. After A–1 became several months in arrears on these payments, the union attempted by letter and telephone to encourage payment. On May 17, when A–1's compliance was not forthcoming, the union withdrew its members from A–1's employ and reassigned them to other jobs. Subsequently, A–1 hired nonunion electricians, violating the hiring hall and union shop provisions.

Following the outlined grievance procedures, the union filed a complaint with a joint conference committee alleging noncompliance by A–1 with the agreement. The committee met in August 1973 and determined that A–1 was guilty of being delinquent on its payments to the various funds and guilty of violating the hiring hall provision of the agreement.

Remedy for the breach was then sought in district court. The district court found that A–1 was in breach of the agreement for failing to observe the union shop and hiring hall provisions and for having made no payments to the relevant funds for any month since March 1973. As damages, the plaintiffs contended that they were entitled to an amount equal to the arrearages in the various funds, computing from the time of the initial default until the complaint was filed or the time of trial. The district court disagreed, however, holding that since none of A–1's employees have belonged to the union since May 17—the time the union withdrew its members—there was no basis for dues checkoff or payment into the other funds. It is this conclusion that the plaintiffs challenge on appeal.

When, as here, an action is brought under section 301(a) of the Labor Management Relations Act (the Act) and the proper remedy is at issue, the starting point for any analysis should be *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. The Court in *Lincoln Mills* adopted the view that section 301(a) authorized "federal courts to fashion a body of federal law for the enforcement" of collective bargaining agreements covered by the Act. *Id.* at 451, 77 S.Ct. at 915, 1 L.Ed.2d at 977. Each remedy should be designed to effectuate the underlying policy of the Act. In the instant case, the lower court determined that the proper measure of damages

for breach of the contract should be general contract law, citing *Brotherhood of Railroad Trainmen v. Denver & R. G. W. R. R.*, 10 Cir., 338 F.2d 407, 409–10, *cert. denied*, 380 U.S. 972, 85 S.Ct. 1342, 14 L.Ed.2d 268, as authority. We agree. However, we question whether in computing the damage award the district court correctly applied general contract law in an effort to effectuate the national labor policy of enforcing collective bargaining agreements.

While the district court was cognizant that A–1 had not only breached the agreement for failure to make prompt payment of union dues and other funds prior to May 17, but had also disregarded the agreement by hiring nonunion personnel subsequent to May 17, it determined that the plaintiffs were not entitled to damages for the second breach because they had suffered no actual injury. The court found "no showing that the Union lost members or that there are fewer contractors assenting to the agreement." This conclusion is incorrect, mainly because it overlooks the facts that had A–1 complied with the union shop provisions and made the appropriate payments after May 17, each of the plaintiffs would have been in an improved economic position. A proper remedy in breach of contract suits is to place the plaintiffs in the position they would have attained had the contract been performed. *Interstate United Corp. v. White*, 10 Cir., 388 F.2d 5, 7. The district court failed to do so in this case.

In similar cases, courts have found that the appropriate measure of damages for the failure of an employer to hire union members when it was contractually required to do so was the amount that should have been paid into union dues and other funds had the agreement been honored. *Bangor & A. R. R. v. Brotherhood of Loc. Fire. & Eng.*, 143 U.S.App.D.C. 90, 100, 442 F.2d 812, 822; *Burlesque Artists Ass'n v. I. Hirst Enterprises*, 3 Cir., 267 F.2d 414, 417. *See also United Shoe Workers, Local 127 v. Brooks Shoe Mfg. Co.*, 3 Cir., 298 F.2d 277, 280–82; *New Park Mining Co. v. Steelworkers, Local 4264*, 10 Cir., 288 F.2d 225, 228. In *Burlesque Artists*, also brought pursuant to section 301(a), the defendant's theaters had breached an agreement requiring persons appearing in the theaters to become members of the plaintiff's association. In measuring the damages suffered by the association due to the theaters' failure to insist that their performers join the association, the court allowed "estimates of what the take to Burlesque Artists would have been had all the persons required to join that organization joined it and paid." *Burlesque Artists Ass'n v. I. Hirst Enterprises, supra*, at 417. Although *Bangor & A. R. R.* was not brought pursuant to the Labor Management Relations Act, its facts and holding are sufficiently analogous to support our determination. Damages were sought for the failure of the railroad company to place firemen on trains operating in full crew states in accordance with the collective bargaining agreement. The court allowed recovery

> of the damage sustained by the Brotherhood as a result of these violations in the loss of the dues, assessments, initiation fees, and other payments which would have been made to [the union] if additional firemen had been employed on the illegally blanked runs.

*Bangor & A. R. R. v. Brotherhood of Loc. Fire. & Eng., supra*, at 822.

As in these cases, we conclude that the appropriate measure of damages resulting from A–1's disregard of the hiring hall and union shop provisions is to assess damages in the amount that it would have paid had it abided by the agreement. To do so also comports with the power of the federal courts under section 301(a) to fashion a remedy that encourages the enforcement of collective bargaining agreements.

A problem arises, however, in fixing the proper time period for measuring these damages. To award damages only for the amounts owed to the union as of May 17 as suggested by the trial court would tend to weaken the enforceability of collective bargaining agreements and allow the breaching party to disregard the agreement and suffer only a minimal penalty. Equally

unworkable is the suggestion by the union that the cutoff date for the damages should be either at the filing of the complaint or at the time of the trial. The filing of the complaint, and indirectly the time of the trial, are somewhat controlled by the plaintiff. To use either as a cutoff point for the assessment of damages would be to encourage some plaintiffs to postpone the filing of their complaint until the last possible moment within the applicable statute of limitations in order to increase the amount of damages.

■ A more reasonable cutoff date for the damages would be the end of the contractual year, in this case May 31, 1973. This is in accord with the general rule in breach of contract cases that the defendant is liable for all damages resulting from the breach that could have been reasonably and fairly contemplated by the parties at the time of execution. *United Shoe Workers, Local 127 v. Brooks Shoe Mfg. Co.*, 3 Cir., 298 F.2d 277, 281–82; *Restatement of Contracts* § 330. It was foreseeable in the instant case that if the collective bargaining agreement were breached, that damages would accrue for at least the remainder of the contractual period.

■ One further problem exists, however, as regards this specific collective bargaining agreement since there was not a definite expiration date. By assenting to the collective bargaining agreement for June 1, 1972, to May 31, 1973, A–1 assented to the automatic renewal of the agreement from year to year thereafter unless it terminated the agreement by giving written notice 90 days prior to the commencement of the new contractual year. In this case, A–1 did not terminate the agreement by written notice. However, in spite of A–1's noncompliance with the termination provision, it is appropriate to limit the damages to the end of the contractual year in which the breach occurred—May 31, 1973—since A–1's intent to terminate the agreement was adequately manifest by its noncompliance.

■ A–1 contends that the union and the trustees of the unpaid funds have no standing to recover dues and other payments on behalf of those nonunion personnel employed by it subsequent to May 17. The union suffered an actual, immediate injury when A–1 disregarded the union shop provisions, therefore it had standing to sue for that injury. As to the nonpayment into the other funds, the standing argument is refuted simply by noting that the bargaining representative's duty of representation extends to all employees in a collective bargaining unit, not merely to union members. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 336–38, 73 S.Ct. 681, 685–686, 97 L.Ed. 1048, 1056–1058. Since provisions of the agreement applied to all the employees of each of the signatories, the union and the trustees were properly before the district court in attempting to enforce these provisions on behalf of the nonunion employees.

■ We deny the plaintiffs' claim of attorney's fees. The Supreme Court has recently clarified the appropriateness of attorney's fees in certain types of litigation, holding that generally, the only recoverable attorney's costs will be in areas where Congress has specifically provided for attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141. Such is not the case here, therefore, we decline to award attorney's fees.

In sum, the district court erred in refusing to grant damages for the period of time following May 17. We reverse and remand the damage award for a computation in accord with the holding herein, including interest on and after the date of the district court's original entry of judgment.

Affirmed in part, reversed in part, and remanded.