Evans v. Yum Brands, Inc., et al.      CV-04-103-JD  07/14/04  P
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Wendy Evans, et al.

        v.                              Civil No. 04-103-JD
                                        Opinion No. 2004 DNH 103
Yum Brands, Inc., et al.


                              O R D E R


        Wendy Evans, the named plaintiff in this proposed class
action lawsuit, has moved to remand the case to state court on
the ground that the defendants have failed to allege in their
notice of removal that the amount in controversy exceeds $75,000.
In response, the defendants have attempted to show that Evans's
damages would meet the requisite sum if she prevails and have
also moved for leave to amend their notice of removal to correct
the asserted defect noted by Evans.  Evans argues that leave
cannot be granted.  The defendants have also asked the court to
require Evans to post a $25,000 bond as security for their costs
in litigating the action.  Evans opposes any bond requirement.
Finally, the parties are at odds over whether discovery should
proceed immediately or await the court's decision on the summary
judgment motion which the defendants intend to file.

<u>Background</u>

This action arises out of media reports in late February 2004 that an employee of the Taco Bell restaurant in Derry had been diagnosed with Hepatitis A. New Hampshire public health officials responded by urging those who had patronized the restaurant between February 7, 2004, and February 21, 2004, to receive immune globulin inoculations. Because Evans, her husband, and their three minor children allegedly had eaten food prepared at the Derry Taco Bell on both of those days, they received the inoculations at a free clinic on February 29, 2004. Evans claims to have learned that the inoculations "would potentially be effective" against her family's second possible exposure to Hepatitis A at the restaurant, on February 21, but not against their first possible exposure, on February 7, because the inoculation works against only those exposures occurring within the preceding fourteen-day period, if at all.

Evans filed a declaration and petition for class action[1] in Rockingham Superior Court on March 11, 2004, against Yum Brands, Inc., Taco Bell Corporation, Taco Bell of America, TACALA North, Inc., and John Doe defendants comprising "any other persons or entities related to, employed by, or working for the named

---

[1]To avoid confusion, the court will use the term "complaint" to refer to this document.

defendants who may be liable . . . ."[2]  Evans alleges that she resides in Derry while Yum, Taco Bell Corporation, and Tacala are all incorporated in states other than New Hampshire.  The complaint does not specifically state any defendant's principal place of business but lists their addresses, each of which is located outside of New Hampshire.

Evans alleges a number of different harms which have befallen her individually as a result of the defendants' actions. She claims to have suffered "nausea and persistent bouts of diarrhea . . . for a period of three to four days" after consuming the food purchased at the Derry Taco Bell on February 7.  Evans also alleges that the inoculation she received "was physically painful" and that "[s]ince learning of [their] family's possible exposure to Hepatitis A and receiving the inoculation," she and her husband have suffered from "persistent nausea and headaches," while she has experienced an additional "darkening of her urine."  Her children have also complained of headaches and nausea and as of March 6, 2004, had developed a rash for which Evans sought to have them treated but "learned

_____

[2]Although the caption of Evans's complaint also lists among the defendants "Taco Bell Restaurant" with the address of the Derry location, she does not identify or make any allegations concerning this entity in the complaint itself and the other defendants have asserted that "Taco Bell Restaurant" has "no independent legal existence."

that she would need to wait at least a week before blood testing should be performed to ascertain whether [they] had contracted Hepatitis A."

Evans therefore "claims damages for physical pain, physical symptoms, fear and emotional distress" arising from the "fear [and] emotional trauma associated with the potential of contracting the disease" which she and her children were experiencing at the time she filed the complaint. She states that Hepatitis A can produce a number of unpleasant symptoms for a period of two to six months, including fatigue, fever, muscle soreness, headache, abdominal pain, nausea, loss of weight and appetite, and yellowing of the skin and the whites of the eyes. The disease can also cause permanent liver damage. Evans also "reserves the right" to seek enhanced compensatory damages and asserts a claim under the New Hampshire Consumer Protection Act. The complaint demands judgment "within the minimum and maximum jurisdictional limits of this Court, together with . . . where appropriate under New Hampshire law, multiple damages and/or attorneys [sic] fees" but does not otherwise quantify Evans's claimed damages.[3]

The complaint seeks to certify a class comprised of everyone

_____

[3]This approach is consistent with New Hampshire law. See N.H. Rev. Stat. Ann. § 508:4-c (prohibiting ad damnum clauses).

4

who "patronized and consumed food at" the Derry Taco Bell between February 7, 2004, and February 21, 2004, "who were potentially and/or actually exposed to" Hepatitis A. The defendants have submitted a newspaper article quoting Evans's counsel as saying that at least fifty plaintiffs had joined her potential class action as of March 17, 2004.

On March 19, 2004, the defendants filed a notice of removal in this court. The notice stated that "[t]he grounds for removal are diversity of citizenship," explaining that each of the defendants was incorporated and had its principal place of business outside of New Hampshire and citing 28 U.S.C. § 1332(c).[4] The notice asserted that removal was "therefore, proper under Section 1441 of Title 28 of the United States Code because this is a civil action in state court over which the federal district courts would have had original jurisdiction had the action been commenced in federal court." The notice makes no assertion as to the amount in controversy.

On March 30, 2004, Evans responded by filing a motion to remand her case to Rockingham County Superior Court on the sole ground that one of the putative John Doe defendants, the manager of the Derry Taco Bell, resided in New Hampshire and that

---

[4]The defendants concede that they cited the wrong statutory subsection in their notice of removal.

5

complete diversity between the adverse parties therefore did not exist. After the defendants objected because the citizenship of those sued under fictitious names is disregarded for purposes of removal, see 28 U.S.C. § 1441(a), Evans filed a motion seeking to add the manager as a named defendant.[5] Evans also objected to the defendants' motion for admission of an attorney pro hac vice on the theory that he might have been involved in the decision to remove the case, which Evans characterized as "improper and in bad faith" because the defendants knew that at least one of the unnamed John Doe defendants resided in New Hampshire. These matters were referred to the magistrate together with another motion Evans had filed seeking relief from her obligation to submit a discovery plan pending a decision on the remand issue. The magistrate denied Evans's motions, noting that the motion for remand "demonstrate[d] a profound ignorance of basic remand law" and criticizing the motion practice of her counsel. The magistrate also granted the motion of the defendants' counsel to appear pro hac vice, calling Evans's objection "frivolous."

In preparation for the preliminary pretrial conference, the parties filed a joint discovery plan on May 7, 2004. The

---

[5]In contravention of 28 U.S.C. § 1446(d), Evans made a motion in state court seeking similar relief after the notice of removal had already been filed.

6

defendants have proposed that initial disclosures and other discovery in the case await a decision on the summary judgment motion which they intend to file. The plaintiffs, however, seek to proceed with discovery so that the issue of class certification can be briefed and heard by the end of September 2004. At the preliminary pretrial conference, counsel for the defendants indicated that he did not object to Evans's taking the deposition of anyone submitting an affidavit in support of the motion for summary judgment but wished to forestall class certification discovery, arguing that it would require, <u>inter alia</u>, obtaining the medical records of everyone potentially exposed to Hepatitis A at the Derry Taco Bell. Evans's attorney stated that he would take only limited discovery from the defendants on the issue of class certification. Following the conference, the court notified the parties that its decision on how discovery is to proceed would await the resolution of Evans's second motion for remand, filed May 17, 2004.

Discussion

I.   <u>The Motions for Remand and to Amend the Notice of Removal</u>

As the parties seeking to invoke federal diversity jurisdiction, the defendants bear the burden of showing that this case satisfies the amount-in-controversy requirement. <u>Stewart v.</u>

7

<u>Tupperware Corp.</u>, 356 F.3d 335, 338 (1st Cir. 2004); <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1, 4 (1st Cir. 2001).  The complaint itself normally suffices to make this showing where the plaintiff has demanded at least the jurisdictional minimum.  <u>Shaw v. Dow Brands, Inc.</u>, 994 F.2d 364, 366 (7th Cir. 1993); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992); 16 James W. Moore <u>et al.</u>, <u>Moore's Federal Practice</u> § 107.14[2][g][v], at 107-80 (3d ed. 1997).  But where, as here, the complaint does not put any number on the plaintiff's claimed damages, this court has required the defendant to show by a preponderance of the evidence that the amount in controversy exceeds the figure necessary for federal diversity jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Tremblay v. Philip Morris, Inc.</u>, 231 F. Supp. 2d 411, 414 n.2 (D.N.H. 2002); <u>Kivikovski v. Smart Prof. Photocopying Corp.</u>, 2001 DNH 43, 2001 U.S. Dist. LEXIS 2017, at *3 (D.N.H. Feb. 20, 2001); <u>Kelleher v. Marvin Lumber & Cedar Co.</u>, 2000 DNH 132, 2000 U.S. Dist. LEXIS 8560, at *4 (D.N.H. June 13, 2000).

Evans asserts that the defendants' failure to claim in the notice of removal that the amount in controversy exceeds $75,000 means that they cannot meet their burden.  The court disagrees.  Although the First Circuit has yet to address the issue, three other federal courts of appeals have held that "[w]hen the complaint does not claim a specific amount of damages, removal

8

from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001); see also Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997); Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995), overruled on other grounds, H & D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc., 227 F.3d 326, 329-330 (5th Cir. 2000); accord Tremblay, 231 F. Supp. 2d at 414-15 (analyzing plaintiff's motion to remand for insufficient amount in controversy on basis of allegations in complaint despite its lack of quantified demand).

In her reply memorandum, Evans argues that the defendants cannot "rely upon [her] general damage claims . . . and [their] conclusory allegations as to the value of those claims," but must "provide specific factual details establishing by a preponderance of the evidence" that the amount in controversy exceeds $75,000. Although a removing defendant's simple say-so will not suffice to demonstrate that a case meets the jurisdictional threshold, see, e.g., Gaus, 980 F.2d at 567, it does not follow that material beyond the allegations of the complaint is necessary to show the requisite amount in controversy. Instead,

> where the district court is making the "facially apparent" determination, the proper procedure is to look only at the face of the complaint and ask whether

9

> the amount in controversy [is] likely to exceed [$75,000]. In situations where the facially apparent test is not met, the district court can then require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal.

Allen, 63 F.3d at 1336. A court need look to the notice of removal and any other materials submitted by the removing defendant, then, only if the jurisdictional amount is not facially apparent from the complaint.[6] See Felton v. Greyhound Lines, Inc., 324 F.3d 771, 773-74 (5th Cir. 2003).

A court determines the amount in controversy in a particular lawsuit based on the circumstances existing at the time the complaint was filed. Spielman, 251 F.3d at 10; Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). "Although the value of the matter in controversy for purposes of federal jurisdiction is generally determined by applying federal standards, the federal court must examine state law to determine

---

[6]In determining the amount in controversy, the Tenth Circuit has refused to consider facts omitted from the notice of removal but subsequently brought to the court's attention by way of the defendant's briefing. Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). The Eleventh Circuit, however, has criticized Laughlin as alone in employing "such a restrictive approach." Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 948 (11th Cir. 2000). Moreover, Laughlin's rule has been rejected by one of this court's sister districts as inconsistent with the First Circuit's amount-in-controversy jurisprudence. Heller v. Allied Textile Corp., 276 F. Supp. 2d 175, 181 (D. Me. 2003). This court therefore declines to follow Laughlin.

10

the nature and the extent of the damages to be awarded." 16 Moore, supra, § 107.14[2][g][iii], at 107-77; see also Stewart, 356 F.3d at 339 (quoting Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961)). Provided a plaintiff's claims are "colorable," the court's inquiry does not focus on their probable success but rather on "whether to anyone familiar with the applicable law [the] claim could objectively have been viewed as worth" the jurisdictional minimum. Jimenez Puig v. Avis Rent-A-Car Sys., 574 F.2d 37, 40 (1st Cir. 1978); see also Coventry Sewage Assocs., 71 F.3d at 5 (cautioning that "'the fact that the complaint discloses the existence of a valid defense to the claim'" does not affect the amount-in-controversy analysis) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1938)).

One of Evans's potential theories of recovery at the time she filed suit was that the defendants caused her to contract Hepatitis A. According to the complaint, the disease can produce up to six months' worth of headaches, nausea, and abdominal pain, as well as permanent damage to the liver. The defendants argue that damages for these symptoms alone would more likely than not exceed $75,000. See Duchesne v. Am. Airlines, Inc., 758 F.2d 27, 28-30 (1st Cir. 1985) (holding that ten months of dizziness and headaches supported claim in excess of $10,000 in 1984 dollars

11

despite "negligible" medical expenses).  Evans also seeks compensation for the "fear and emotional trauma associated with the potential of contracting Hepatitis A," as manifested by her "persistent nausea and headaches and a darkening of her urine" since learning of her possible exposure.  New Hampshire law provides for the recovery of such damages, i.e., emotional distress manifested by physical symptoms.  See Thorpe v. Dep't of Corrs., 133 N.H. 299, 302-303 (1990).

Evans further alleges facts suggesting that the defendants caused her husband and children to contract Hepatitis A as well.  Evans can recover for her alleged resulting emotional distress if she can prove that "the manner in which [she] became aware of the injury was reasonably foreseeable to cause [her] harm."  Corso v. Merrill, 119 N.H. 647, 657 (1979).  Her husband's alleged symptoms, which included "persistent nausea and headaches" at the time the complaint was filed, also give rise to a possible loss of consortium claim.  See Bennett v. Lembo, 145 N.H. 276, 282 (2000) (upholding $25,000 verdict for wife where defendant's negligence rendered husband less "physically active").

Objectively viewed, Evans's claims for her own alleged Hepatitis A and the loss of consortium and emotional distress resulting from her family's allegedly coming down with the disease could be valued at $75,000 or more.  See Stewart, 356

12

F.3d at 340 (concluding that married couple's claims for slight "permanent impairment to their total bodily functions" in addition to mental anguish and loss of consortium not worth less than $75,000 per plaintiff); cf. Ortega v. Star-Kist Foods, Inc., 370 F.3d 124, 2004 U.S. App. LEXIS 10714, at *10-*16 (1st Cir. June 5, 2004) (holding that claim for emotional distress arising out of daughter's "relatively minor" injuries did not exceed $50,000 for purposes of amount in controversy).

Evans also seeks multiple damages under the state Consumer Protection Act, which, as she notes, provides for an award of between two and three times a plaintiff's actual damages in the event of a "willful or knowing" violation. N.H. Rev. Stat. Ann. § 358-A:10. When a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy. See, e.g., Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 (9th Cir. 2000); Rosen v. Chrysler Corp., 205 F.3d 918, 922 (6th Cir. 2000); Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998). Thus, as the defendants argue, Evans's claims cross the jurisdictional threshold even if her asserted compensatory damages barely exceed $25,000.[7]

_____

[7]Evans argues that the defendants "fail to specify which portion of [her] damage claims, if any, are subject to statutory

13

Based on the foregoing analysis, it is facially apparent from Evans's own complaint that the value of her claims exceeds $75,000. The defendants have therefore carried their burden to show the amount in controversy by a preponderance of the evidence. Evans cannot rely on King v. Wal-Mart Stores, Inc., 940 F. Supp. 213 (S.D. Ind. 1996), to urge the opposite conclusion on this court. Although King rejected the removing defendant's attempt to show the requisite amount in controversy "solely through its reliance upon the general allegations in [the] complaint," it did so in large part because the plaintiff had disputed the value of those allegations by stipulating that her damages did not meet the jurisdictional threshold.[8] Id. at

enhancement" under section 358-A. Her complaint states, however, that the defendants violated the statute through "the acts and omissions" she alleges, without limitation. The statute, meanwhile, provides for "recovery . . . in the amount of actual damages or $1,000, whichever is greater," subject to multiplication in appropriate circumstances, to "[a]ny person injured" by a violation. N.H. Rev. Stat. Ann. § 358-A:10. Because Evans herself claims that the defendants' complained-of actions in toto violated the Consumer Protection Act, and alleges a variety of harm flowing from those actions, all of her damages are subject to statutory enhancement for purposes of determining the amount-in-controversy. See Tremblay, 231 F. Supp. 2d at 415.

[8]The court in King also stated that the defendant could not rely upon the complaint "as evidence of the jurisdictional amount because it is not 'competent proof.'" 940 F. Supp. at 216-17 (quoting Reason v. Gen. Motors Corp., 896 F. Supp. 829 (S.D. Ind. 1995)). To the extent this statement requires a removing

14

216-17. Evans, in contrast, has not provided any information on the value of her claims beyond the allegations of her complaint or even made any argument that those allegations on their face do not support recovery in excess of $75,000.[9]

The court is mindful that the burden to demonstrate the requisite amount in controversy rests with the removing defendant. Nevertheless, a plaintiff cannot ensure remand simply through repeated assertions, unaccompanied by any analysis, that the defendant has failed to show that the value of the plaintiff's claims exceeds $75,000, as Evans attempts to do here.[10] The arguments set forth in the defendants' objection to

defendant to introduce "summary-judgment-type evidence" that the amount in controversy exceeds $75,000 regardless of whether that proposition is facially apparent from the complaint, this court declines to follow King as inconsistent with Allen.

[9]Evans does argue that the amount of the claims of each class member cannot be aggregated, that the possible award of attorneys' fees under N.H. Rev. Stat. Ann. § 358-A cannot be considered for purposes of determining the amount in controversy, and that the court cannot rely on reported jury verdicts from other states to assess the value of Evans's claims. The court, however, need not reach these arguments.

[10]In her objection to the defendants' motion to amend their notice of removal, Evans argues that if they are allowed to do so she "will at that point have the opportunity to challenge [their] allegations with respect to the amount in controversy." Evans has already had that opportunity in both the primary and reply briefs she filed in support of her motion for remand, but has failed, or refused, to do so.

15

the motion for remand establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. The defendants' reliance upon Evans's own allegations in doing so follows the approach contemplated by the case law and, from a practical standpoint, is the only avenue available to them given the early stage of the litigation.

Accordingly, the court need not rely on the defendants' notice of removal to establish the amount in controversy. See Heller, 276 F. Supp. 2d at 181 (D. Me. 2003) (looking beyond notice of removal, which erroneously invoked bankruptcy jurisdiction, to complaint itself, which showed diversity jurisdiction). The fact that the notice fails to state the amount constitutes a mere "defect other than lack of subject matter jurisdiction" within the meaning of 28 U.S.C. § 1447(c). See Harmon v. OKI Sys., 902 F. Supp. 176, 177 (S.D. Ind. 1995), aff'd, 115 F.3d 477 (7th Cir. 1997); Tate v. Werner Co., 2002 WL 1398533, at *4 (S.D. Ind. June 26, 2002); accord In re Allstate Ins. Co., 8 F.3d 219, 221 (5th Cir. 1993) (holding that failure to allege plaintiff's citizenship in notice of removal amounted to "defect in removal procedure" under former version of 28 U.S.C. § 1447(c)). Under the statute, a motion to remand the case on the basis of such a defect "must be made within 30 days after the filing of the notice of removal . . . ." 28 U.S.C. §

16

1447(c). Evans did not bring the instant motion to remand until May 17, 2004, even though the defendants filed their notice of removal on March 19, 2004. To the extent Evans seeks remand on the ground that the notice fails to state that the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1441, her motion comes too late. She has waived any such defect in the removal procedure. See McMahon v. Bunn-O-Matic Corp., 150 F.3d 651, 653 (7th Cir. 1998); 16 Moore, supra, § 107.41[1][c][ii][C], at 107-190.

For the foregoing reasons, Evans's motion to remand the case to the Rockingham County Superior Court is denied. Because Evans has waived any omission of the amount in controversy from the notice of removal, the defendants' motion to amend it to make explicit that more than $75,000 is at stake is denied as moot. Cf. Heller, 276 F. Supp. 2d at 179-81 (allowing amendment of notice of removal to assert diversity jurisdiction where clear from face of complaint but plaintiff made timely motion to remand based on absence of jurisdictional basis from notice).

17

## II. The Motion for Bond

The defendants seek to require Evans to post a bond as security for their costs in defending this action.[11] As authority for this relief, they invoke Local Rule 67.1, which states that

> [e]xcept as otherwise provided by statute or court rule, parties, resident and nonresident, shall not be required as a matter of course to give security for costs in this court. In any civil proceeding, the court, either on its own initiative or on the motion of a party, may order any party except the United States to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. The motion of a party shall state in sufficient detail the circumstances warranting the requested security for costs. The court may at any time modify or rescind such an order or direct that additional or other security be furnished.

L.R. 67.1(a). This court has not had occasion to consider the rule in any order published or otherwise posted on its website.

In recognizing the validity of local rules dealing with the imposition of security for costs, the First Circuit has held that a district court "is vested with a large measure of discretion in applying such rules as it does promulgate." Hawes v. Club

_____

[11]In their reply to Evans's objection, the defendants accuse her of "presum[ing] that [they] propose that the representative plaintiff post the bond sought in their motion." That is precisely what the defendants requested in their motion, however. Moreover, the defendants fail to provide any argument or authority for the suggestion that the responsibility to post bond for the defendant's costs in a putative class action should be distributed across all likely members of the class.

18

_Ecuestre El Comandante_, 535 F.2d 140, 143-144 (1st Cir. 1976).

Nevertheless, the circuit has cautioned that "[w]hile it is

neither unjust nor unreasonable to expect a suitor to put his

money where his mouth is, toll-booths cannot be placed across the

courthouse doors in a haphazard fashion." _Aggarwal v. Ponce Sch._

_of Med._, 745 F.2d 723, 728 (1st Cir. 1984) (internal citation and

quotation marks omitted); _see also_ _Murphy v. Ginorio_, 989 F.2d

566, 568-69 (1st Cir. 1993); _Donato v. McCarthy_, 2001 DNH 183,

2001 U.S. Dist. LEXIS 17398, at *4-*5 (D.N.H. Oct. 9, 2001)

(considering whether to require appeal bond).

Beyond generally marking the limits of the court's

discretion to require a bond for costs, however, the First

Circuit's decisions in this area provide limited guidance in

applying Local Rule 67.1, because they considered a different

local rule concerning security for costs, Rule 304 of the United

States District Court for the District of Puerto Rico.  While the

Puerto Rico rule mandates security for costs in the case of a

foreign plaintiff absent a showing of good cause, _see, e.g._,

_Murphy_, 989 F.2d at 568, this court's rule provides that

"parties, resident and nonresident, shall not be required to give

security for costs as a matter of course."  L.R. 67.1

Furthermore, a party seeking to impose a bond requirement on its

adversary in this court must show "the circumstances warranting

19

the requested security for costs." Id. For the court to require Evans to post security for the defendants' costs, then, they must show circumstances that differentiate this action from those brought in this court "as a matter of course."

The defendants argue that their substantial likelihood of success on the merits, significant anticipated discovery costs, and Evans's "groundless motion practice" so far constitute such circumstances. The First Circuit has interpreted Puerto Rico Rule 304 to call for an assessment of the plaintiff's likelihood of success on the merits. See Hawes, 535 F.2d at 144. It is not clear, however, that Local Rule 67.1 contemplates such an analysis, except insofar as the plaintiff's victory appears so improbable as to render the case much weaker than those the court ordinarily sees. Indeed, the court has reservations about trying to handicap the lawsuit at this stage, where little more than the initial pleadings have been submitted.[12] Based on the parties'

---

[12]In endorsing the plaintiff's likelihood of success on the merits as a factor to consider in imposing a bond for costs under Rule 304, Hawes cited Farmer v. Arabian Am. Oil Co., 285 F.2d 720 (2d Cir. 1960), noting that it reversed an order for $6,000 in security for the defendant's costs "where plaintiff had made a strong prima facie case." 535 F.2d at 144 n.5. The court in Farmer had already made that determination as part of a prior decision reversing the district judge's dismissal of the case following a jury verdict for the plaintiff. 285 F.2d at 721. The defendant had also waited until more than four years after commencement of the lawsuit to ask for a bond. Id. at 722. In most cases, however, a defendant will request security for costs

present submissions, the court concludes that neither side has demonstrated a clear likelihood of success on the merits. <u>See</u> <u>Donato</u>, 2001 U.S. Dist. LEXIS 17398, at *3.

The defendants also argue that they expect to incur significant costs in litigating this action. Specifically, they assert that "they will be required to depose a minimum of fifty persons," given the reported number of plaintiffs who had joined the potential class as of March 17, 2004, and that the depositions will cost them at least $25,000. According to the defendants, the bond they have requested is reasonable in light of these anticipated costs. <u>See</u> <u>Murphy</u>, 989 F.2d at 568-69.

It is true that the majority of lawsuits in this court, as a matter of course, do not entail so many depositions. Nevertheless, requiring Evans to post security sufficient to pay for the depositions of all those who have identified themselves as candidates for the class would be to employ Rule 67.1 as a

---

at the outset of the litigation, generally before the court can make any accurate assessment of the strength of the plaintiff's claims. <u>Cf.</u> <u>Murphy</u>, 989 F.2d at 568 (noting that district judge imposed bond under Rule 304 where defendants had raised res judicata defense which plaintiff did not dispute). In this court's view, the plaintiff's likelihood of success on the merits therefore carries little weight in determining whether to require security for costs under Local Rule 67.1 in the ordinary case where, as here, many of the essential facts and much of the applicable law remain either unclear or in dispute at the outset.

bludgeon, rather than as a scalpel.  See Aggarwal, 745 F.2d at 728.  The defendants must bear some responsibility for weighing their need for each deposition against the risk that its cost may ultimately prove uncollectible.[13]  This court is disinclined to relieve the defendants of their burden to litigate their case in a sensible fashion by imposing a financial burden on Evans.

Finally, the defendants explain that Evans's motion practice to date has caused them concern that they may "incur costs responding to groundless pleadings" in the future.  Although the First Circuit has endorsed "the conduct of the litigants" as a factor to consider in deciding whether to require a bond, Hawes, 535 F.2d at 144, Evans's tactics have not yet reached the level sufficient to warrant security for costs.[14]  Cf. Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1965) (upholding security for expenses given plaintiff's status as "an habitual pro se litigant whose claims were often conclusory and lacking in legal merit"), cited in Hawes, 535 F.2d at 144 n.8.

---

[13]Indeed, nearly every litigant faces this decision to some degree because the prospect of securing a favorable judgment and concomitant entitlement to costs is rarely assured, particularly before the close of discovery.

[14]This conclusion is not intended to call into question any of the magistrate's prior admonitions to Evans's attorneys about their motion practice.  Appropriate sanctions are available and will be employed by the court should Evans engage in similar motion practice in the future.

22

The defendants have therefore failed to show the circumstances which distinguish this case from those brought in this court as a matter of course.[15]  Their motion to require Evans to post a bond to secure their costs is denied.

III.  The Dispute Over the Discovery Schedule

The defendants propose that initial disclosures and other discovery await the court's decision on the summary judgment motion they intend to file.  The plaintiffs, however, seek to proceed with class certification discovery so that the issue can be briefed and argued in September 2004.

In potential class actions, like in other kinds of litigation, "[c]ourts generally frown on motions to stay discovery and deny them in the absence of compelling reasons." 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions §

---

[15]Because the court has determined that no bond requirement is justified, it need not proceed to consider Evans's ability to post security for costs.  Cf. Murphy, 989 F.2d at 569.  The court notes, however, that any meaningful assessment of this factor requires some information about the plaintiff's financial wherewithal.  See Aggarwal, 745 F.2d at 725 (noting that plaintiff submitted affidavit explaining employment status and assets).  Here, in contrast, Evans asks this court to find her unable to put up the requested bond based solely on the statement in her objection that she is "a person of limited financial resources."  Counsel are reminded that they have an obligation to provide a sufficient factual basis for any argument urged upon this court.

9:43, at 404 (4th ed. 2002); see also Medimatch, Inc. v. Lucent Techs., Inc., 120 F. Supp. 2d 842, 862 n.20 (N.D. Cal. 2000); In re Lotus Dev. Corp. Sec. Litig., 875 F. Supp. 48, 51 (D. Mass. 1995); In re Proxima Corp. Sec. Litig., 1994 U.S. Dist. LEXIS 21443, at *43-*44 (S.D. Cal. 1994); Dickson v. Chicago Allied Warehouses, Inc., 1993 U.S. Dist. LEXIS 12914, at *34-*35 (N.D. Ill. Sept. 15, 1993). A defendant's confidence that it will prevail on a dispositive motion does not in and of itself justify holding discovery in abeyance. See Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990); accord Miller Brewing Co. v. Silver Bros. Co., No. 88-229-SD (D.N.H. Sept. 29, 1992), available at http://www.nhd.uscourts.gov (rejecting pendency of motions as reason to stay discovery).

Beyond their stated intention to move for summary judgment, the only reason the defendants have provided for delaying discovery is that they face significant expense in obtaining information from everyone potentially exposed to Hepatitis A at the Derry Taco Bell. Again, however, it is up to the defendants to decide whether taking such extensive discovery is worth the price in this case. Evans has represented that she will seek only three depositions and "other limited discovery" on the issue of class certification. Accordingly, the defendants will not be put in the potentially unfair position of having to respond to

24

onerous discovery requests from Evans despite their strong conviction that they will prevail as a matter of law.

The defendants' request that discovery await a decision on their planned summary judgment motion is therefore denied. The parties are ordered to confer for purposes of preparing an amended discovery plan pursuant to Fed. R. Civ. P. 26(f) and to file the plan with the court by **July 23, 2004.** To the extent any disagreements over the scope or scheduling of discovery remain, the court will take them up at that time.

## Conclusion

For the foregoing reasons, Evans's motion to remand for lack of subject matter jurisdiction (document no. 28) is DENIED. The defendants' motion for leave to amend their notice of removal (document no. 31) is DENIED as moot. The defendants' motion to require Evans to file a bond for costs (document no. 27) is also DENIED. The parties shall file an amended joint discovery plan in accordance with Fed. R. Civ. P. 26(f) by **July 23, 2004.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

July 14, 2004
cc:  Peter E. Hutchins, Esquire
     Andrew W. Serell, Esquire
     Bruce G. Tucker, Esquire

25